WASH IRVING v. THE STATE.

No. 2242. Decided April 23, 1913.

1.—Assault to Murder—Sufficiency of the Evidence.

Where, upon trial of assault to murder, the evidence sustained the conviction under a proper charge of the court, there was no error.

2.—Same—Evidence—Other Transactions—Res Gestae.

Upon trial of assault with intent to murder, there was no error in admitting testimony that defendant in the fight with the party injured struck a

third party with his fist and attempted to strike her with a chair. This was part of the res gestae.

### 3.—Same—Evidence—Motive.

Upon trial of assault to murder which arose about a certain woman, there was no error in admitting testimony that the said woman, although she had a husband, was not living with him, and that defendant went to see her, etc.

### 4.—Same—Charge of Court—Sufficiency of the Evidence.

Where, upon trial of assault to murder, the evidence did not raise the question of self-defense and the court submitted all the issues raised by the evidence as to malice, ability to commit a battery, accidental shooting, etc., and there was no question of manslaughter in the case and the evidence sustained the conviction, there was no error.

Appeal from the District Court of Nacogdoches. Tried below before the Hon. James I. Perkins.

Appeal from a conviction of assault to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—Appellant was convicted of an assault with intent to murder Cal Sanders on February 29, 1912. His penalty was fixed at two years in the penitentiary.

The evidence was amply sufficient to show that for about a year before the assault is charged to have occurred on February 29, 1912, appellant had been attached to a negro woman; that Cal Sanders had recently also begun to pay attentions to the woman, which incensed appellant. Cal Sanders had been boarding for some time with Clark Whittaker, said woman's uncle, and recently before the assault, the woman, who had been living elsewhere before, had then moved to and was also living with said Whittaker. On the night of February 28th appellant went to Whittaker's house and stayed all night. Sanders slept in an adjoining room. Appellant slept in the same room, in which the woman slept, on a bed on the floor. The woman slept on a bed in the southwest corner of the room, Whittaker and his wife on a bed in the southeast corner of the room. During the night the woman's child was sick and she was up with it two or three times, and it was crying during the night and created considerable disturbance. The next morning about daylight, Cal Sanders came into the room where the woman was,—she then being up with the child about the fire,—to make a fire. Appellant was still in bed. Sanders complained to the woman and did some cursing or ugly talk in an ordinary tone about the "kid's" keeping so much fuss during the night as to prevent him from sleeping, and stated, in substance, that the next time it occurred he was going to break out of there, or break somebody out of there, or make somebody break out of there,—some such language. He continued to make

the fire, having procured wood from the gallery for that purpose. While he was making a fire appellant got up, slipped on his pants and went over to the head of Whittaker's bed and procured a gun. The gun was not loaded, though there were shells in the magazine thereof. He worked the gun so as to put one of the shells into the barrel ready for shooting. About this time the woman called out to Sanders, in effect, to look out that "Wash (appellant) is about to shoot you." Just then the appellant did shoot at Sanders, missing his head only a few inches, the ball striking a clock and the wall just above Sanders' head. Whittaker, hearing and seeing that appellant had a gun, had just gotten out of bed and immediately after the gun fired,—not before,—he grabbed appellant around the arms and after struggling with him for the possession of the gun, succeeded in getting it from him. Immediately afterwards or during the scuffle appellant struck the woman with his fist and attempted to strike her with a chair. Sanders and appellant then began fighting with their fists, and clenching. They were soon separated. Appellant claimed that he did not shoot at Sanders but that the gun went off accidentally when Whittaker seized him and attempted to take the gun from him. A witness, Davis, swore that on Saturday evening before this shooting occurred the following Wednesday night that he had a talk with appellant wherein he was "deviling" him about Sanders having taken said woman away from him, and swore that at that time appellant stated to him that Sanders had done him a wrong about the woman and he intended to kill him. Some of the witnesses testified that immediately before the shooting appellant again reiterated and stated to Sanders, just before or at the time he shot at him, that he intended to kill him. The evidence did not raise self-defense by appellant, nor did it raise the question of manslaughter, if a killing had occurred.

The court did not err in admitting the testimony to the effect that appellant, in the fight immediately after the shooting, struck the woman with his fist and attempted to strike her with a chair. That was a part of the res gestae of the transaction and threw some light on appellant's state of mind at the time, of what his intention was with reference to killing Sanders. Neither did the court err in admitting the testimony showing that said woman, although she had a husband, was not living with him, but that she was then living at her uncle's, Whittaker's, where said Sanders boarded. Nor to that testimony going to show that appellant was going to see her at the time, for all this tended to prove motive on the part of appellant for the assault by him upon Sanders. The court gave a full and correct charge, submitting the case on the evidence that was adduced. And required the jury to believe, beyond a reasonable doubt that appellant shot at and towards Sanders with a gun within carrying distance, with malice aforethought and with the specific intention at the time of killing said Sanders, before they could find him guilty of an assault with intent to murder. And told them that unless they so found to acquit appellant. Besides,

he charged the burden of proof on the State, and reasonable doubt in favor of appellant. On the subject of the accidental discharge of the gun, he charged: "If you believe the gun was fired at or towards Cal Sanders but you further believe or have a reasonable doubt as to whether or not such is the fact, that the discharge of the gun was accidental, the result of interference of Clark Whittaker and without purpose or design of defendant, or that it was discharged without a specific intent on part of defendant, then to kill Sanders, you will find the defendant not guilty." The court did not, therefore, err in refusing to give appellant's special charge requested on that subject, for as stated by the court in the refusal thereof, it was fully embraced in the charge of the court.

As stated above, the evidence did not raise the question of self-defense on the part of appellant in the shooting and it did not raise the question of manslaughter, if the shooting had resulted in the killing of Sanders. Therefore, the court did not err in refusing to give appellant's special charges on this subject, even if they were raised in such a way as to require this court to pass upon those questions.

There being no reversible error pointed out in the trial of the case, the judgment will be affirmed.

*Affirmed.*